UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALEX YOUNG, | ) |
| | ) |
| PLAINTIFF | ) Civil Action No. 1:14-cv-1203 (BAH) |
| vs. | ) |
| | ) |
| RICHARD SARLES, | ) |
| | ) |
| | ) |
| DEFENDANT | ) |
| | ) |

## MOTION FOR ATTORNEYS' FEES AND COSTS

Plaintiff respectfully moves the Court for an award of attorney fees and costs. Plaintiff

seeks an award of $29,317.30 for work on the merits and $3,799 for work on this fee petition (to

be supplemented should any further briefing on this motion be necessary).

Undersigned counsel has conferred with counsel for Defendant who does not consent to the

relief sought in this motion.

/s/ Jeffrey Light
Jeffrey L. Light
D.C. Bar #485360
1712 Eye St., NW
Suite 915
Washington, DC 20006
(202)277-6213
Jeffrey.Light@yahoo.com
*Counsel for Plaintiff and Participating Attorney for*
*THE RUTHERFORD INSTITUTE*

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ALEX YOUNG, | ) | |
| | ) | |
| PLAINTIFF | ) Civil Action No. 1:14-cv-1203 (BAH) | |
| vs. | ) | |
| | ) | |
| RICHARD SARLES, | ) | |
| | ) | |
| | ) | |
| DEFENDANT | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS**

### I.    INTRODUCTION

This civil rights action was brought by Plaintiff Alex Young against Richard Sarles, General Manager of the Washington Metropolitan Area Transit Authority ("WMATA"), in his official capacity. Mr. Young sought preliminary and injunctive relief enjoining WMATA from enforcing its Use Regulations as applied to his busking activity. The Court granted Plaintiff's motion for a preliminary injunction and subsequently granted Plaintiff's motion for summary judgment, converting the preliminary injunction into a permanent injunction.

As the prevailing party, Plaintiff is now entitled to reasonable attorneys' fees under federal law, 42 U.S.C. §1988. Plaintiff's attorneys' fee request consists of a lodestar of $29,317.30 for work on the merits and $3,799 for work on this fee petition. Plaintiff further reserves the right to submit a supplemental fee petition should a reply in support of this motion need to be filed.

In this Memorandum, Plaintiff will briefly recount the procedural history of this litigation to put his fee claim in context.  Plaintiff then will show that his attorneys' fees are reasonable: the number of hours spent is fully documented and reflects both the exercise of billing judgment

1

and the difficult burdens Plaintiff's counsel faced in this action and the hourly rates are well in line with the prevailing market rates for similarly complex federal litigation.

## II.   STATEMENT OF FACTS AND PROCEEDINGS

### A.  Plaintiff's Busking Activity and WMATA's Response

WMATA use regulations describe activities that may be conducted on WMATA property by non-WMATA personnel or by the public. Under § 100.10 of WMATA's "Regulations Concerning the Use of WMATA Property" (hereinafter "WMATA Regulations"), free speech activity is permitted if it takes place at a distance greater than fifteen (15) feet from any escalator, stairwell, faregate, mezzanine gate, kiosk, or fare card machine. Subsection (d) prohibits individuals engaging in free speech activity from carrying out commercial activity.

Plaintiff Alex Young busks at Metro stations in the D.C. metropolitan area. In October 2013, Mr. Young was busking at a Metro station in Virginia and was situated more than fifteen (15) feet from the entrance of the station. A WMATA officer ordered Mr. Young to stop playing his guitar or face arrest. According to the officer, busking was a "commercial activity" and prohibited at the Metro station. Mr. Young did not want to be arrested so he stopped playing his guitar and left.

The following month, Mr. Young was again busking at a Metro station more than fifteen (15) feet from the entrance to the station. A WMATA officer threatened to arrest Young if he continued his busking activity on WMATA grounds and premises. Fearing arrest, Mr. Young discontinued his activity and left.

Mr. Young called the Transit Police headquarters and asked about the legality of busking near Metro stations. Mr. Young was informed that free speech activities are allowed at least

fifteen (15) feet from a Metro entrance or exit. He was also advised that playing music for donations is not free speech and is prohibited.

### B.  Plaintiff Obtains Legal Assistance from The Rutherford Institute

In November 2012, Plaintiff contacted The Rutherford Institute concerning his attempts to engage in busking near Metro stations and he asked for advice concerning his rights. (McKusick Decl. ¶ 4).  After researching the applicable WMATA regulations and case law, Rutherford Institute attorney Douglas McKusick advised Mr. Young about his rights. (McKusick Decl. ¶ 4.)

In November 2013, Plaintiff again contacted the Rutherford Institute. (McKusick Decl. ¶ 5.) Plaintiff informed Mr. McKusick that he had been ordered on two occasions by WMATA agents to stop busking on WMATA property and was warned that he would be arrested if he was found busking on WMATA property in the future. (McKusick Decl. ¶ 5.) Mr. McKusick reviewed the facts communicated by Mr. Young and concluded that the demands and threats made to Mr. Young violated his First Amendment rights. (McKusick Decl. ¶ 5.) The Rutherford Institute thereafter entered into an agreement with Mr. Young to assist and represent him in defending his constitutional right to freedom of expression. (McKusick Decl. ¶ 5.)

Mr. McKusick thereafter conducted research concerning the applicable WMATA regulations and current court decisions relevant to the issues presented by Mr. Young's case. (McKusick Decl. ¶ 6.) Mr. McKusick proceeded to draft a letter on Mr. Young's behalf addressed to WMATA's Chief of Police, Ronald Pavlik, asserting that Mr. Young was within his rights under the First Amendment to engage in busking as he had done, that the demands of WMATA officers that he cease doing so and threats that he would be arrested if he did violated Mr. Young's First Amendment rights, and requesting assurances that Mr. Young's First Amendment rights would be respected by WMATA officers in the future. (McKusick Decl. ¶ 7.)

The letter was dated December 16, 2013. (McKusick Decl. ¶ 7.) A copy of the letter can be found as Exhibit 2 to Plaintiff's Motion for a Preliminary Injunction.

In January 2014, Mr. McKusick received a response to his December 16 letter from Bruce P. Heppen, Chief Counsel for Metro Transit Police. (McKusick Decl. ¶ 8.) In the letter, dated January 3, 2014, Mr. Heppen asserted that Mr. Young's busking violated WMATA regulations and was not protected by the First Amendment. (McKusick Decl. ¶ 8.) The letter did not provide assurances that Mr. Young would be allowed to engage in busking at WMATA stations. (McKusick Decl. ¶ 8.) A copy of the letter can be found as Exhibit 3 to Plaintiff's Motion for a Preliminary Injunction.

Mr. McKusick thereafter attempted to find local counsel for Mr. Young to bring a lawsuit on his behalf to secure and vindicate Mr. Young's First Amendment rights. (McKusick Decl. ¶ 9.) Unfortunately, it is difficult to obtain the services of an attorney to assist in a *pro bono* matter where, as in this case, the prospects of a significant contingency fee award are not available. (McKusick Decl. ¶ 18.) It is even more difficult when the case involves novel questions of constitutional law and federal law like the instant case. (McKusick Decl. ¶ 18.)

### C.  Plaintiff Retains Mr. Light and Mr. Day

Mr. McKusick contacted the undersigned, Jeffrey L. Light, about the case and Mr. Light agreed to assist Mr. Young by representing Mr. Young in the instant lawsuit. (McKusick Decl. ¶ 9.) Mr. Light, a solo practitioner, agreed to represent Plaintiff on a *pro bono* basis, as a "Participating Attorney" of the Rutherford Institute. As a Participating Attorney, Mr. Light agreed not to charge The Rutherford Institute for any services provided and not to charge Mr. Young on an hourly basis or other fee basis, nor to require of client a retainer fee for services.

Mr. Light initially spoke with Plaintiff near the end of March 2014, but was unable to immediately begin preparing a motion for a preliminary injunction due to a heavy civil and criminal docket. Mr. Light therefore sought assistance on the case from another attorney experienced in First Amendment and federal civil rights litigation, Mr. Sean Day. Mr. Day agreed to serve as co-counsel on a *pro bono* basis. While Mr. Light served as counsel of record, the bulk of the work of preparing the initial filings (i.e., Complaint and Motion for Preliminary Injunction) was done by Mr. Day. After Mr. Light's schedule lightened somewhat, he was able to conduct most of the work on the latter portion of the case.

### D.  Procedural History of the Case

After commencing this lawsuit, Plaintiff filed a Motion for Preliminary Injunction. The parties briefed the motion and the Court held a hearing. The Court granted Plaintiff's Motion for a Preliminary Injunction on August 14, 2014 [ECF dkt: 13]. Plaintiff then moved for summary judgment [ECF dkt: 17]. Defendant sought a stay of proceedings in order to provide WMATA time to "carefully review[] the breadth and implementation of the Use Regulation at issue." [ECF dkt: 18 at 4.] The Court granted the motion for a stay on October 21, 2014. Defendant sought and received an extension of the stay until February 23, 2015 [ECF dkt: 20].

Defendant eventually determined that it would not oppose Mr. Young's motion for summary judgment [ECF dkt: 21] and the Court accordingly granted Plaintiff's motion and converted the preliminary injunction to a primary injunction. At the parties' request [ECF dkt: 22], the Court set a schedule for briefing the issue of attorney fees.

### III.    PLAINTIFF IS THE PREVAILING PARTY

Plaintiff's entitlement to an award of reasonable attorneys' fees under federal law is undisputable.  Under 42 U.S.C. §1988, a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Here, because Plaintiff has obtained the benefit sought in his lawsuit – a judgment vindicating his constitutional rights and enabling him to conduct his busking activity – he is the "prevailing" party in this litigation. *See Hensley,* 461 U.S. at 433.

Moreover, there are no "special circumstances" here that would render an award "unjust." The overriding purpose of private attorney general fee awards is to compensate attorneys who vindicate protected rights, regardless of the amount of damages, if any, that may be involved: "A primary congressional purpose in enacting section 1988 was to encourage worthwhile litigation that is necessary to protect civil rights . . . . Where parties prevail in vindicating important rights, but receive little or no financial benefit as a result of that litigation, it was considered unfair for those parties to bear their own attorney's fees." *Martin v. Heckler,* 773 F.2d 1145, 1150-1151 (11th Cir. 1985) (*en banc*). As the Ninth Circuit noted in *Moreno v. City of Sacramento,* 534 F.3d 1106 (9th Cir. 2008):

> Lawyers must eat, so they generally won't take cases without a reasonable prospect of getting paid.  Congress thus recognized that private enforcement of civil rights legislation relies on the availability of fee awards:  "If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it cost them to vindicate these rights in court." 534 F.3d at 1111 (*quoting* S. Rep. No. 94-1011, at 2 (1976), as reprinted in 1976 U.S.C.C.A.N. 5908, 5910).

Given these purposes, the "special circumstances" that would deny fees to a prevailing plaintiff are construed very narrowly. *New York Gas Light Club, Inc. v. Carey*, 447 U.S. 54, 68 (1980). Attorney fee awards therefore "are not designed merely to penalize defendants, but to encourage injured individuals to seek relief." *Miller v. Staats*, 706 F.2d 336, 343 (D.C. Cir. 1983).

In the instant case, there are no such "special circumstances" that would make a fee award "unjust." As this Court found, WMATA's policy as applied to Mr. Young violated the First Amendment right. Accordingly, the Court first preliminarily, and then permanently, enjoined Defendant from continuing to engage in its unconstitutional actions. This is the very purpose of §1988. *See, e.g., Ackerley Communications, Inc. v. City of Salem*, 752 F.2d 1394, 1398 (9th Cir. 1985) (recognizing that §1988 "was enacted for the very purpose of influencing governmental entities to make thoughtful efforts to *avoid* civil rights violations.") (Emphasis added).

Plaintiff's counsel, with no assurance of compensation, litigated this case vigorously and well. In the end, they secured a judgment and injunction establishing WMATA's violation of one of the Plaintiff's most fundamental constitutional rights. This is the very essence of the purpose of § 1988. Having fully vindicated important rights as a private attorney general, Plaintiff is entitled "to recover what it cost [him] to vindicate these rights in court." *Moreno,* 534 F.3d at 1111.

## IV.    PLAINTIFF'S ATTORNEYS' FEES ARE REASONABLE.

Under federal law, the determination of whether Plaintiff's attorneys' fees are reasonable begins with a determination of the lodestar.  *See*, *e.g.*, *Hensley*, 461 U.S. at 433. There is a "strong presumption that the lodestar figure – the product of reasonable hours times a reasonable rate – represents a 'reasonable' fee[.]" *Pa. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

In the instant case, the total lodestar claimed for work on the merits is $29,317.30, based on 24.9 hours claimed by Mr. Light at $655 per hour, 14.8 hours claimed by Mr. Day at $655 per hour, and 4.2 hours claimed by Mr. McKusick at $789 per hour. This amount does not include compensable time deleted in the exercise of billing judgment. This amount also does not include fees-on-fees.

Plaintiff also is entitled to his fees for this motion. It is "settled in this circuit" that "[h]ours

reasonably devoted to a request for fees are compensable." *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 528 (D.C. Cir. 1985). The total lodestar for fee-related services (to date) is $3,799, to be supplemented for any additional work. This amount is based on 4.8 hours claimed by Mr. Light at $655 per hour, 1.0 hours claimed by Mr. Day at $655 per hour, and no hours claimed by Mr. McKusick.

A.  The Purpose of the Federal Fee-Shifting Statute Requires Full Compensation for Fees

Plaintiff recognizes that no monetary damages were sought or awarded in this action.  That circumstance, however, is clearly something that Congress fully anticipated.  Indeed, it was precisely because the potential damages in civil rights cases generally would not provide a sufficient incentive for attorneys to take them, no matter how important the underlying rights, that fee-shifting statutes were enacted.  *See Riverside v. Rivera,* 477 U.S. 561, 578 (1986) ("private sector fee arrangements [are] inadequate to ensure sufficiently vigorous enforcement of civil rights;" to ensure representation, Congress "determined that it would be necessary to compensate lawyers for all time reasonably expended on a case").

As all concerned recognized, the value of civil rights cases cannot be measured in monetary terms alone:

> "'[W]e reject the notion that the value of civil rights action for damages constitutes nothing more than a private tort suit benefiting only the individual plaintiffs whose rights were violated.  Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms.'"  *Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989) (citations omitted).

Thus, plaintiffs who bring civil rights cases act not only on their own behalf, but also as a "'private attorney general,' vindicating a policy that Congress considered of the highest priority." *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 402 (1968).

Under federal law, successful plaintiffs are entitled to be fully compensated for all of their

reasonable efforts at full market value. *See Blum v. Stenson,* 465 U.S. 886, 893(1984) (fee awards must make civil rights cases as financially attractive as "'other types of equally complex ...litigation.'")

Although each of the attorneys involved in this case agreed to work *pro bono*, fee awards "should not be based on the costs of the successful party. Instead, fees should be based on the market value of the legal services rendered." *Copeland v. Marshall*, 641 F.2d 880, 899-900 (D.C. Cir. 1980) (*en banc*). The D.C. Circuit has made clear that it is "not relevant" that counsel originally agreed to representation pro bono because there is "nothing inconsistent in prosecuting a case in the public interest, agreeing not to charge one's own client a fee and thereafter seeking fees from the losing defendant." *Id*. at. 900.

## B.  The Number of Hours Claimed is Reasonable

Counsel for Plaintiff is entitled to be compensated for every hour reasonably spent to vindicate their client's interests:

> Where a plaintiff has obtained excellent results, his attorney should recover a *fully compensatory fee*. Normally, this will encompass *all hours reasonably expended on the litigation*, and indeed in some cases of exceptional success an enhanced award may be justified. *Hensley v. Eckerhart*, 461 U.S. at 435 (emphasis added).

Under this standard, every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest is compensable. *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982).

Once the plaintiff has provided the court with a sufficiently detailed invoice, a "presumption arises [in the plaintiff's favor] that the number of hours billed is reasonable[,] and the burden shifts to the defendants to rebut the plaintiff's showing of reasonable hours." *Baker v. D.C. Pub. Sch.*, 815 F. Supp. 2d 102, 107-08 (D.D.C. 2011) (alterations in original).  The defendant's burden is to show that the time claimed is "obviously and convincingly excessive

under the circumstances." *Cobell v. Norton*, 407 F. Supp. 2d 140, 161 (D.D.C. 2005) ("[S]worn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required in the usual case and therefore, it must appear that the time claimed is obviously and convincingly excessive under the circumstances.")

In *Moreno v. City of Sacramento, supra*, the Ninth Circuit recognized that district courts generally should defer to the winning lawyer's professional judgment concerning the number of hours spent:

> "It must be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. *By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.*" 534 F.3d at 1112 (emphasis added).

Several factors show that the hours claimed here are eminently reasonable:

- Plaintiff's claim is fully documented by detailed time summaries, based on contemporaneous records that show when and how each tenth of an hour was spent.

- Plaintiff's counsel have exercised significant billing judgment. Certain categories of compensable attorney time have not been claimed. This omitted time includes time spent on travel, for example. *Id.* Additionally, time spent on administrative tasks such as photocopying have not been claimed, even though they are likely compensable at a paralegal's rate.

- Plaintiff's counsel staffed this case efficiently. Although three attorneys worked on this case, they each focused on different parts of the case, resulting in an efficient division of labor. Mr. McKusick was responsible for correspondence with WMATA that was a prelude to the filing of this case. Mr. Day was responsible primarily for preparation of the initial filings in this case (i.e., the Complaint and Motion for Preliminary Injunction.) Mr.

Light was responsible primarily for work performed subsequent to the filing of the

litigation (e.g., Motion for Summary Judgment, Reply in Support of Motion for

Preliminary Injunction, Motion for Attorney fees). Although there was some overlap in

the responsibilities of Mr. Day and Mr. Light, this overlap was minimal and well-

justified by the need to consult on particularly complicated First Amendment legal issues.

All of Plaintiffs' claimed hours are reasonable and should be fully compensated.

## C.  The Claimed Hourly Rates are Reasonable

As described in more detail in the attached declarations, Plaintiff's counsel are all

experienced attorneys who have extensively litigated federal civil rights cases, and in particular

First Amendment cases. The First Amendment issues in this case were complex, with no clear

precedent from the United States Supreme Court or D.C. Circuit to guide the Court on the status

of "busking" as a form of speech. Much of the authority cited by both sides was non-binding,

either because it addressed only analogous situations or because it was from a different

jurisdiction. Counsel was therefore required to explain why such decisions were persuasive,

rather than simply citing the decisions for mechanical application. Finally, this case was

financially undesirable from a business standpoint, given the lack of monetary damages and the

uncertainty as to the likelihood of success on the merits. Plaintiff's counsel nevertheless

undertook this case to vindicate important First Amendment principles and obtained an excellent

result.

The experience of counsel and the nature of this case amply justify the use of the Adjusted

Laffey Matrix. As this Court has recognized, the Adjusted (Updated) Laffey Matrix represents

the prevailing market rate in the District of Columbia. *Eley v. District of Columbia*, 999 F. Supp.

2d 137, 150-56 (D.D.C. 2013). In order to reflect the delay in payment, Plaintiff relies on the

current Adjusted Laffey Matrix rates for all hours spent on this case. *See Harvey v. Mohammed*,

951 F. Supp. 2d 47, 55 (D.D.C. 2013) (applying current year rates for time expended in previous years); *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989) ("An adjustment for delay in payment is, we hold, an appropriate factor in the determination of what constitutes a reasonable attorney's fee under § 1988.")

## V.      CONCLUSION

The plain intent of Congress in enacting a fee-shifting statute as part of the civil rights law was to encourage competent attorneys to take on cases like this one, where important constitutional principles are involved, but there is little or no compensatory damages.  If that purpose is to be served, Plaintiff's counsel must be fully compensated for their efforts.  Plaintiff respectfully requests that this Court grant the motion.

/s/ Jeffrey Light
Jeffrey L. Light
D.C. Bar #485360
1712 Eye St., NW
Suite 915
Washington, DC 20006
(202)277-6213
Jeffrey.Light@yahoo.com
*Counsel for Plaintiff and Participating Attorney for*
*THE RUTHERFORD INSTITUTE*

12