IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DICK ANTHONY HELLER, et al., | ) | Case No. 03-CV-0213-EGS |
| | ) | |
| Plaintiffs, | ) | **DECLARATION OF** |
| | ) | **DR. MICHAEL KAVANAUGH** |
| v. | ) | |
| | ) | |
| DISTRICT OF COLUMBIA, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## DECLARATION OF DR. MICHAEL KAVANAUGH

I, Michael Kavanaugh, am competent to state and declare the following based on my personal knowledge.

1. My name is Michael Kavanaugh. I am an economist in private practice at 19-4231 Road E, Volcano Hawaii, 96785.

2. I hold a Ph.D. in economics from the University of Cincinnati (1975) and a BA in economics from Xavier University (1970). I have taught economics at the University of Cincinnati and at Northern Kentucky University. For 30 years I have worked as an economist for a variety of clients including the U.S. Department of Justice, the U.S. Environmental Protection Agency, the U.S. Department of the Interior, the States of Ohio, California, and Alaska, citizen groups and private industry. I have been qualified as an expert in Federal court in financial and economic matters numerous times. A copy of my curriculum vitae with a listing of sworn federal testimony is attached as Exhibit 1.

3. Plaintiffs' counsel in this civil action asked me to perform two tasks. First, to update the *Laffey* Matrix of rates for complex legal services in the Washington DC metropolitan area using the most currently available data. To accomplish this I applied a specific legal services price index as of April 2010 to the most recent survey of *Laffey* Matrix rates for the Washington DC metropolitan area. This procedure is explained in ¶4 to ¶16. Second, to find a simple and fair way to compensate for ordinary delay in payment for the resources expended prior to April 2010. To accomplish this I relied on the Supreme Court Decision in *Missouri v. Jenkins* and cases from the United States District Court for the District of Columbia. This is discussed in ¶17 to ¶20. My opinions about the appropriate way to update the *Laffey* Matrix and how to compensate simply and fairly for ordinary delays in payment are stated to a reasonable degree of certainty

under the standards of my profession.

4. I first updated the *Laffey* Matrix in *Oscar Salazar, et al., v. The District of Columbia et al.,* Civil No. 93-452 (GK) before Judge Kessler. That decision, which uses the analysis I prepared, is reported at 123 F. Supp. 2d 8 (D.D.C. 2000). I have prepared declarations in several other cases. Although I do not maintain a complete list of all my work, I do know my analysis was also adopted in the cases of *Interfaith Community Organization v. Honeywell*, 336 F.Supp.2d 370 (D.N.J. 2004) and *PIRG v. Magnesium Elecktron, Inc.* Civil No 89-3193, Slip Op. 2, 10 (D.N.J. Dec. 28, 1995) vacated on other grounds 123 F.3d 111 (3d Cir. 1997).[1]

5. *Laffey* Matrix rates are used in the application of the "lodestar" method to determine fee awards. The lodestar method is a straightforward and simple way to determine a fee award. In its basic form the lodestar method sorts the number of hours that were reasonably expended on the civil action into categories that reflect differing levels of legal experience. It proceeds by multiplying the number of hours in each category by hourly billing rates for each labor category. The *Laffey* Matrix provides a schedule of the prevailing hourly billing rates for the Washington DC metropolitan area for the specified labor categories.[2] A variant of the method shows the amount billed for each worker. It places the workers and the hours that they worked into the *Laffey* labor categories that reflect their current level of experience. It proceeds by multiplying the number of hours in each category by hourly billing rates for each labor category. Again, the *Laffey* Matrix provides a schedule of the prevailing hourly billing rates for the Washington DC metropolitan area for each labor category.

6. The matrix is called the "*Laffey* Matrix" because the District Court for the District of Columbia adopted it in 1982 in *Laffey* v. *Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), affirmed in part, reversed in part on other grounds, 746 F.2d 4 (D.C. Cir. 1984), cert. denied, 472 U.S. 1021 (1985). Subsequently, in 1989 the *Laffey* Matrix was updated with new rates in connection with *Save Our Cumberland Mountains v. Hodel.* 857 F.2d 1516 (D.C. Cir. 1988) (en banc).

7. An updated *Laffey* Matrix has been used for nearly twenty (20) years: as one measure for determining appropriate fee awards for litigation between the Federal and District government and private parties in areas where the law provides for an

---

[1] I did not participate in: Yasdani v. Access ATM 474 F.Supp. 2nd 134, 138 (D.D.C. 2007) (Facciola, M.J.); Muldrow v. Re-Direct, Inc., 397 F Supp 2nd 1, 2-4, & n.3 (D.D.C 2005) (Huvelle, J.) or McDowell v. District of Columbia 2006 U.S. Dist. LEXIS 46371 (D.D.C.2006)

[2] The labor categories are: (1) attorney with more than 20 years of experience; (2) attorney with 11 to 19 years of experience; (3) attorney with 8 to 10 years of experience; (4) attorney with 4 to 7 years of experience; (5) attorney with 1 to 3 years of experience, and; (6) paralegal or law clerk.

8. The Office of the U.S. Attorney for the District of Columbia uses an updated *Laffey* Matrix to make fee awards. Their approach is to take the 1982 hourly rates for the Washington DC metropolitan area approved by the D.C. Circuit in 1983, and to apply the change in the Metropolitan Washington area Consumer Price Index (CPI) to those 1982 rates.

9. The method I use and describe in this declaration produces a matrix that differs from the matrix used by the U.S. Attorney. There are two reasons for this. First, I use an index specific to legal services; the U.S. Attorney uses the entire CPI for Metro D.C., which has items in it that are not relevant to the market for legal services and these other items are given much more weight than legal services.[3] Second, the U.S. Attorney's method applies the more general index to 1982 observations of rates; the method I use applies the specific legal services index to the most recent survey of rates for the Washington DC metropolitan area developed in 1989 in response to the remand decision in *Save Our Cumberland Mountains v. Hodel*. The method used to find the 1989 rates is described in the declaration of Joseph Yablonski submitted in the case of *Broderick v. Ruder*, D.C. Civil No. 86-1824 (Pratt, J.). Yablonski's survey is recognized as an appropriate basis for the updating of *Laffey* rates.[4]

10. In general, the more contemporary the observation, the less possibility exists for forecasting error. The *Laffey* update that I construct, then, is more likely to be a more accurate estimate of current market rates for the Washington DC metropolitan area because it updates the more recent market observations of rates for the Washington DC metropolitan area.

11. When using indices economists try to use the most specific index available. This helps them make a more accurate assessment of the market forces that influence an industry. Applying this principle, the specific components of the CPI, to the extent they are available, are the better resource to update an industry's prices (as opposed to the entire CPI). This is because there are two strong forces that exert pressure on prices over time. One is inflation, a rise in the general price level; the

---

[3] A partial listing of such "non-legal service" items includes: food "away from home," alcoholic beverages, rent on primary residence, fuels and utilities, household furnishings and operations, apparel, private transportation, gasoline, medical care, recreation and "education and communication." See http://data.bls.gov/PDQ/outside.jsp?survey=cu

[4] *See, e.g., Salazar v. The District of Columbia*, 123 F. Supp. 2d at 13, citing, *Sexcius v. District Columbia,* 839 F.Supp. 919, 924 (D.D.C.1993); *Trout v. Ball,* 705 F.Supp. 705, 709, n. 10 (D.D.C.1989). It expressly approves use of the Yablonski declaration from the *Broderick* case to support of a fee petition; *Palmer v. Barry,* 704 F.Supp. 296, 298 (D.D.C.1989).

award of fees; to narrow the differences in disputes among private parties over the reasonableness of fee awards; and to inform and assist Courts who may have to settle these differences.

other is a supply and demand imbalance, often called market imbalances.

12. Often for a specific good or service, market imbalances are the stronger of the two and can accentuate or negate inflation. This has been the case in the market for electrical components and parts (e.g., computers) for more than thirty years and more recently for fossil fuels. If a broad index is used to adjust an industry's prices over time, then the specific supply and demand effects are suppressed and only the effect of inflation is captured. On the other hand, when a specific index is used the net effect of both forces is captured that is the effect of both inflation and market imbalances are captured. This is why it is preferable, and more accurate, to use a specific index rather than a broad index.

13. The legal services index measures, *inter alia*, the fees charged for providing specific legal services. These measures include preparing a brief, attending a deposition and representing parties in civil proceedings. But just as the CPI does not include all items in the U.S. economy, the legal service index does not include the fees charged for every service rendered by lawyers. The large size and complexity of the U.S. economy makes impossible including every price in the economy on an index.

14. It is a common practice in economics to make prices from part of an industry stand for prices in the whole industry. Letting the part stand for the whole is what the U.S. Department of Commerce does when it prepares estimates of an industry's contribution to gross domestic product (GDP). For example, when measurements of the entire legal industry's contribution to the output of the nation are made, the legal services index of the CPI is used. When the contribution to GDP of all medical services is calculated the physicians' component of the CPI is used. When the contribution to GDP of radio, TV and air conditioning repair services is calculated, the appliance and furniture repair component of the CPI is used.

15. The legal services index is a national index that includes the metropolitan Washington D.C., area.[5] Adjusting the *Laffey* Matrix with a national index assumes that the rate of change of prices for legal services is about the same everywhere. This does not mean that prices are the same everywhere. But even if prices differ in different places, the rate of change of prices is likely to be about the same. Resource mobility and low-cost, readily available long-distance communications make this a logical and defensible assumption. While it is possible for prices for the same good or service to change at different rates in different places, this is more likely to happen with goods and services for which there is only a local market because their transport is expensive relative to their value or because communication is difficult. For goods and services that are

---

[5] The entity that produces the CPI and its components is The United States Department of Labor, Bureau of Labor Statistics (BLS). BLS does not produce a legal services index specific to any particular metropolitan area. To ask that the Washington DC area rates be adjusted by a Washington DC legal services index is to ask for an item that does not exist.

    easily transported or communicated, resource mobility and arbitrage will attenuate price change differences.

16. I used the following method to update the 1989 *Laffey* Matrix. First, I obtained monthly data for the legal service component of the CPI maintained by the Bureau of Labor Statistics of the U.S. Department of Labor and computed the annual change on a June-to-June basis.[6] Second, I applied the annual change to the 1989 *Laffey* matrix rates for legal services in the metropolitan Washington DC area for each labor category to produce an hourly rate for each of the six labor categories for each year since 1989. The results for April 2010 are in the table below. These rates reflect the best estimate, in my professional opinion, of the prevailing rates for complex legal services by labor category in the Washington DC metropolitan area. This is because rates for legal services for the DC Metropolitan area are adjusted by an index for legal services that does not suppress either of the key forces of inflation or market imbalances.[7]

| Yrs from Law School | April 2010 |
|---|---|
| 20+ | 709 |
| 11-19 | 589 |
| 8-10 | 522 |
| 4-7 | 361 |
| 1-3 | 342 |
| Paralegal | 161 |

17. As I understand it this civil action took several years to resolve and this fee application involves hours spent in years prior to 2008. The rates for April 2010, in my opinion, are appropriate for valuing all of the hours expended on this civil action regardless of the year in which the work occurred. As the U. S. Supreme Court observed in *Missouri v. Jenkins* (491 U.S. at 283-84):

> Clearly compensation received several years after the services were rendered - as is frequently the case in complex civil litigation – is not equivalent to the same dollar amount received reasonably promptly as legal services are performed, as would normally be the case with private billings. We agree, therefore, that an appropriate adjustment for delay in

---

[6] The 1989 survey stated rates as of June of 1989. See Yablonski Declaration in *Broderick v. Ruder*, D.C. Civil No. 86-1824 (Pratt, J.) at ¶4.

[7] Adjusting only for changes in the cost-of-living by using the change in the metropolitan CPI is to commit an error of omission because such a procedure omits the force of market imbalances. The market imbalance force is what makes computers cost so much less today and what makes oil and natural gas cost so much more. A good faith effort to be accurate and fair requires the inclusion of market imbalances.

      payment – whether by the application of current rather than historic rate or otherwise – is within the contemplation of the statute.

      To an economist, the U. S. Supreme Court is stating a basic economic principle, namely, that a dollar today is worth more than a dollar tomorrow. This concept is often referred to as opportunity cost.

18.    Simple restitution provides the principle that a simple and fair way to compensate for delay in payment can be obtained by using the current rate for the person's category that performed the work. A quantity of legal effort (e.g., an hour) provided in a previous period is being restored with the resources needed to employ the same person today. In a rising market the provider of the service receives a capital gain on the resources employed in past periods, but this gain is needed to attract and retain competent human capital.[8],[9]

19.    As noted in *Missouri v. Jenkins*, there may be other ways to compensate -- that is, other ways to restore the firm to the revenue level it would have obtained had it been paid at the time the service was performed. I believe that the other compensation methods are more complex, have higher transaction costs, raise the specter of interest payments and may not be any better than simply using current *Laffey* rates for the attorneys who performed the work. For example, instead of using *Laffey* rates, the rates that prevailed when the legal services were provided could be adjusted by the opportunity cost of the receiving party. Deciding on the appropriate opportunity cost rate is likely to be a costly, complex and controversial endeavor. Indeed, there may be several appropriate rates throughout the period of delay as economic circumstances change. Finally, some might mistake the adjustment as a windfall instead of compensation needed to attract and retain competent human capital.

20.    The D.C. Circuit has said that there is a need for simple rules in fee cases *Murray*, 741 F.2nd at 1433. Attempting to turn back the clock to a prior time to determine the then current rate and then to adjust that past rate for opportunity cost is not simple.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on June 1, 2010.

                                                      /s/ MICHAEL KAVANAUGH, PhD

---

[8] If the market for competent counsel in complex litigation were flat or falling, there would be no controversy in using current rates.

[9] The DC Circuit has taken this approach. In Environmental Defense Fund v. EPA 672 F.2nd (DC Cir 1982), the court applied the current rate of attorneys based on seniority at the time of the petition.