## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALEX YOUNG,<br><br>               Plaintiff,<br><br>               v.<br><br>RICHARD SARLES, *General Manager,*<br>*Washington Metropolitan Area Transit*<br>*Authority*<br><br>               Defendant. | Civil Action No. 14-1203 (BAH)<br><br>Judge Beryl A. Howell |

## MEMORANDUM OPINION

The plaintiff, Alex Young, successfully sought a permanent injunction barring the defendant, the Washington Metropolitan Area Transit Authority ("WMATA"), from interfering with his practice of performing music in the vicinity of WMATA station entrances and accepting donations from passersby, a practice referred to as "busking." Having prevailed in his effort to vindicate his rights under the First Amendment, the plaintiff has sought reimbursement, pursuant to 42 U.S.C. § 1988, of attorneys' fees and litigation costs he incurred in pursuing both his underlying claim and his present request for attorneys' fees. While WMATA does not dispute that the plaintiff is entitled to reimbursement of reasonably incurred fees, the parties dispute the rate at which the plaintiff must be reimbursed, as well as the degree to which certain hours for which the plaintiff seeks reimbursement were reasonably billed. As such, pending before the Court is the plaintiff's motion for attorneys' fees and costs. Pl.'s Mot. Att'ys.' Fees & Costs, ECF No. 23. For the reasons set forth below, the plaintiff's motion is granted in part and denied in part.

# I.    BACKGROUND

The present fee petition arises out of the plaintiff's challenge to a WMATA regulation prohibiting commercial activity on WMATA station grounds and premises. *See generally* Compl., ECF No. 1.  Contending that this regulation unconstitutionally infringed upon his First Amendment right of expression, the plaintiff sought a preliminary injunction barring enforcement of the regulation as applied to his practice of busking outside of various WMATA stations. *Id.*  Following a hearing to consider the merits of the plaintiff's claim, the Court granted the plaintiff's request and preliminarily enjoined WMATA from enforcing the offending regulation to prevent the plaintiff from busking on certain "free" areas on WMATA property. *See* Order Granting Prelim. Inj. Relief, ECF No. 13.  Thereafter, the Court granted, as conceded, the plaintiff's subsequent motion for summary judgment and converted the preliminary injunction to a permanent injunction.  Minute Order, dated Feb. 24, 2015.

With the merits of the plaintiff's action against WMATA thus resolved, the plaintiff now seeks reimbursement of the attorneys' fees and litigation costs he incurred in litigating his successful First Amendment claim.  Specifically, the plaintiff requests reimbursement, pursuant to 42 U.S.C. § 1988, for fees billed by three attorneys who together litigated the plaintiff's underlying claim.  The plaintiff was represented first in this matter by a Staff Attorney for the Rutherford Institute, a nonprofit organization that provides legal assistance on a variety of civil liberties matters.  This Staff Attorney drafted an initial demand letter to WMATA asserting the plaintiff's First Amendment right to perform unimpeded on certain WMATA property.  Pl.'s Mem. Supp. Mot. Att'ys' Fees & Costs ("Pl.'s Mem.") at 3–4, ECF No. 23; Decl. Douglas R. McKusick (Apr. 17, 2015) ("McKusick Decl.") ¶ 3, ECF No. 23-5.  After WMATA rejected the plaintiff's request to refrain from enforcing its regulations against him, the Staff Attorney

engaged two "Participating Attorneys," each of whom is a solo practitioner licensed to practice in the District of Columbia. Pl.'s Mem. at 4–5; Fee Aff. Jeffrey L. Light (Arp. 18, 2015) ("Light Aff.") ¶¶ 2–3, ECF No. 23-1; Fee Aff. Sean R. Day (Arp. 17, 2015) ("Day Aff.") ¶¶ 2, 5, ECF No. 23-3. These Participating Attorneys prepared the plaintiff's submissions before this Court in support of his First Amendment claim and subsequent request for attorneys' fees. *Id.*

In total, the plaintiff initially sought reimbursement of $38,344.40 in attorneys' fees and costs, which included $29,317.30 stemming from the 43.9 his attorneys billed litigating the merits of his underlying claim, $3,799.00 for 5.8 hours his attorneys devoted to preparing the instant fee request, and $5,228.10 for 7.9 hours billed in connection with the plaintiff's reply in support of his fee request. Pl.'s Mem. at 7–8; Pl.'s Reply Supp. Mot. Att'ys.' Fees & Costs ("Pl.'s Reply") at 1, ECF No. 28. To arrive at his requested fee award, the plaintiff proposes a reimbursement rate for each of his attorneys based on figures provided by the "[a]djusted ([u]pdated)" *Laffey* fee matrix, which the Court refers to below as the "LSI/*Salazar* Matrix."[1] Under this matrix, based on the number of years each of his attorneys has practiced, the plaintiff originally requested reimbursement for the 4.6 hours billed by his public interest attorney at an hourly rate of $789.00 and, for the 53 hours billed by the two Participating Attorneys, who prepared and filed his submissions in this Court, at an hourly rate of $655.00. *Id.*

During the course of briefing the present petition, the plaintiff subsequently revised his request to include the additional hours his attorneys' billed in connection with the ongoing fee

---

[1] Established in *Laffey v. Nw. Airlines, Inc.,* 572 F. Supp. 354, 371 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), the *Laffey* Matrix recommends a presumptive maximum hourly rate for attorneys engaged in "complex federal litigation," *id.* at 372. In the years since it was initially proposed, the *Laffey* Matrix has spawned two versions: (1) a version maintained by the U.S. Attorney's Office for the District of Columbia, which is linked to inflation, as measured by the Consumer Price Index for all items in the Washington, DC area ("USAO *Laffey* Matrix"); and (2) an "enhanced" version, first approved in *Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000), which is adjusted for inflation using the more rapidly rising Legal Services Index of the nationwide Consumer Price Index ("LSI/*Salazar* Matrix"). *See Jones v. District of Columbia*, No. 15-CV-155 (BAH), 2015 WL 9907797, at *1, n.1 (D.D.C. Oct. 29, 2015).

litigation and reflect the rates provided by the current LSI/*Salazar* Matrix for his attorneys' current levels of experience. *See* Pl.'s Mem. at 8; Pl.'s Reply at 8–10; Pl.'s Supp. Mats. Supp. Mot. Att'ys.' Fees & Costs ("Pl.'s Supp."), Ex. 10 (Updated Time Sheets), ECF No. 33-12. As a result of these revisions, the plaintiff's final requested award totals $50,515.50, including: (1) 4.6 hours billed by his public interest attorney, at an hourly rate of $796.00; (2) 15.8 hours billed by his senior Participating Attorney, also at an hourly rate of $796.00; (3) 51.1 hours billed by his junior Participating Attorney, at an hourly rate of $661.00; and (4) $500 in litigation costs. *Id.*

## II.  LEGAL STANDARD

Under the general federal fee-shifting provision, courts may award "a reasonable attorneys' fee" to prevailing private parties in any action or proceeding to enforce a wide variety of federal civil rights statutes. 42 U.S.C. § 1988(b). In principle, "[a] reasonable fee is one that is "adequate to attract competent counsel, but that does not produce windfalls to attorneys.'" *West v. Potter*, 717 F.3d 1030, 1033 (D.C. Cir. 2013) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).

The D.C. Circuit has developed a three-part analysis for assessing whether a requested fee award is reasonable in a particular case. *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015). "First, the court must determine the number of hours reasonably expended in litigation. Second, it must set the reasonable hourly rate. Finally, it must determine whether use of a multiplier is warranted." *Id.* (internal citations and quotations omitted).[2] With regard to the proposed hourly rate, the Court considers three sub-elements: "(1) 'the attorney['s] billing practices;' (2) 'the attorney['s] skills, experience, and reputation;' and (3) 'the prevailing market

---

[2]    Since the plaintiff's requested fee award in this case includes no proposed multiplier, *see generally* Pl.'s Mem., the discussion that follows addresses only the number of hours billed by the plaintiff's attorneys and the rate at which this time should be compensated.

rates in the relevant community.'" *Id.* (quoting *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995)). In evaluating the factors that inform the appropriate reimbursement rate, there is a "strong presumption that the fee yielded by the now-ubiquitous 'lodestar' method, which bases fees on the prevailing market rates in the relevant community, is reasonable." *West*, 717 F.3d at 1034 (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010)).

"The 'fee applicant bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates.'" *Eley*, 793 F.3d 100 (quoting *Covington*, 57 F.3d at 1107–08). Once an applicant meets this initial burden, a presumption applies that the number of hours billed and the hourly rates requested are reasonable. *Covington*, 57 F.3d at 1110–11; *see also Jackson v. District of Columbia*, 696 F. Supp. 2d 97, 101 (D.D.C. 2010) (citing *Blackman v. District of Columbia*, 677 F. Supp. 2d 169, 172 (D.D.C. 2010)). At that point, the burden shifts to the opposing party to "provide specific contrary evidence tending to show that a lower rate would be appropriate." *Covington*, 57 F.3d at 1109–10 (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1326 (D.C. Cir. 1982)).

## III.   DISCUSSION

Opposing the present fee petition, WMATA does not dispute that the plaintiff, having obtained his requested injunctive relief, is entitled to reimbursement of reasonable attorneys' fees. Def.'s Opp'n Pl.'s Mot. Att'ys.' Fees & Costs ("Def.'s Opp'n") at 1, ECF No. 26. Nonetheless, WMATA challenges both the reasonableness of certain hours billed by the plaintiff's attorneys, as well as the rate at which the plaintiff will be reimbursed for his attorneys' time. *Id.* The discussion that follows addresses each of these objections in turn, beginning with

a determination of the number of hours reasonably billed by the plaintiff's attorneys before turning to consideration of the appropriate rate at which these hours should be reimbursed.

### A.    The Hours Billed by the Plaintiff's Attorneys are Reasonable

WMATA contests two categories of hours billed by the plaintiff's attorneys in connection with his successful First Amendment action. As explained below, however, WMATA fails to demonstrate that either category of hours was unreasonably billed.

First, WMATA takes issue with the plaintiff's request for reimbursement for his public interest attorney's pre-litigation efforts to resolve the plaintiff's objection to the challenged WMATA regulation. In particular, WMATA objects to full reimbursement under the LSI/*Salazar* Matrix for 4.1 hours this attorney billed to research and compose the plaintiff's initial demand letter to WMATA. *Id.* at 3. According to WMATA, reimbursement at this attorney's LSI/*Salazar* rate, which yields a total award of $3,195.45, is "on its face unreasonable." *Id.* Contending that this work "could have been performed by a law clerk or an attorney at a much lower rate," WMATA asks the Court to reimburse the plaintiff at an hourly rate not to exceed $370.00. *Id.*

At the outset, while styled as a challenge to reasonableness of these hours, WMATA's objection more directly targets the *rate* at which the plaintiff will be reimbursed for his public interest attorney's efforts. In any event, as the plaintiff explains, this attorney drew upon his expertise in First Amendment jurisprudence to research and compose the plaintiff's initial demand letter. Pl.'s Reply at 5–6. While these tasks certainly could have been completed by a more junior attorney, it strains credibility to suggest that an attorney lacking similar expertise and experience would compose a letter of similar quality in four hours. Further, WMATA offers no support for its suggestion that the preparation of the plaintiff's demand letter must be

reimbursed differently than this attorney's subsequent efforts before this Court. *See generally* Def.'s Opp'n. Finally, WMATA provides no basis for capping the plaintiff's reimbursement for these hours at a rate of $370.00, which corresponds to the rate WMATA proposes for one of the Participating Attorneys, who later assisted in preparing the plaintiff's submissions before this Court. *Id.* at 3.

Absent any authority suggesting that the plaintiff's public interest attorney must be compensated at a reduced rate, and no more generously than his less experienced co-counsel, for his initial efforts on the plaintiff's behalf, the Court declines WMATA's invitation to impose such a cap. Moreover, to the extent that WMATA contests the *number* of hours devoted to the preparation of the plaintiff's initial demand letter, the Court agrees with the plaintiff that the 4.1 hours billed by the plaintiff's public interest attorney to prepare the four-page letter, *see* Pl.'s Mot. Prelim. Inj., Ex. 2 (Ltr. from Douglas R. McKusick to Ronald Pavlik, dated Dec. 16, 2013), ECF No. 2-2, were reasonable.

WMATA's second challenge more directly addresses the reasonableness of the hours billed by the plaintiff's attorneys. In particular, WMATA challenges the plaintiff's request for reimbursement for 7.4 hours billed by one of the Participating Attorneys in connection with his submission in support of his Motion for Summary Judgment, ECF No. 17. Def.'s Opp'n at 4. According to WMATA, the "substance" of the plaintiff's complaint and motion for a preliminary injunction was "in large part incorporated wholesale" into the plaintiff's later submission requesting summary judgment on his First Amendment claim. *Id.* In support, WMATA highlights four pages of the plaintiff's memorandum in support of his summary judgment motion, which are largely identical to language included in the plaintiff's prior motion for a preliminary injunction. *Id.* (citing Pl.'s Mem. Supp. Mot. Summ. J. ("Pl.'s Summ. J. Mem.") at

13–17, ECF No. 17).  Apparently contending that all hours billed in connection with this filing were unreasonable, WMATA opposes reimbursement of any fees incurred in the "drafting the memorandum in support of [the plaintiff's] motion for summary judgment."  *Id.*

As an initial matter, while WMATA is correct that certain arguments advanced by the plaintiff in support of his motion for summary judgment track closely those set out in his earlier request for a preliminary injunction, these similarities are largely understandable.  Indeed, the plaintiff's motion for summary judgment was filed less than two months after the Court granted his initial request for a preliminary injunction, with the plaintiff forgoing formal discovery before seeking a permanent injunction.  *See* Minute Order, dated Aug. 14, 2014; Pl's Summ. J. Mem. (filed Oct. 7, 2014).[3]  The resulting submission spanned twenty-two pages and included the aforementioned brief, as well as a draft order and statement of undisputed material facts, as required under the Court's local rules.  *See* LCvR 7(c), (h)(1).  WMATA apparently does not object to reimbursement for hours devoted to preparation of these accompanying materials, which presumably account for some portion of the 7.4 hours billed in connection with the plaintiff's summary judgment motion.

In any event, the WMATA's conclusory assertions alone are insufficient to demonstrate that the hours billed in connection with his summary judgment brief are unreasonable.  In addition to the duplicative language mentioned above, the plaintiff's brief included a summary of the factual allegations underlying his claim and the WMATA regulations subject to challenge, as well as a discussion of the plaintiff's standing to pursue his claim in federal court and a thorough

---

[3]     WMATA's outright objection to hours billed in connection with the plaintiff's request for summary judgment is somewhat ironic.  In fact, WMATA initially objected to the plaintiff's decision to forgo discovery, which WMATA asserted would "unreasonably truncate the proceedings."  Am. Meet & Confer Statement at 4, ECF No. 15.  Only after the plaintiff moved for summary judgment, prompting a four-month stay of proceedings to allow WMATA to review its regulations, *see* Minute Orders, dated Oct. 21, 2014 and Dec. 22, 2014, did WMATA ultimately decline to oppose the plaintiff's request for a permanent injunction, *see* Status Report, ECF No. 21.

analysis of the degree to which busking is protected under the First Amendment. Pl.'s Summ. J. Mem. at 1–13. As the plaintiff explains, preparation of this newly added material involved significant additional research into unsettled areas of First Amendment law, as well as additional time—for which the plaintiff does not seek reimbursement—into the history of busking. *See* Pl.'s Reply at 6–8. As such, in light of the numerous issues addressed for the first time in support of the plaintiff's dispositive motion, the Count finds no basis for concluding that 7.4 hours billed by the plaintiff's counsel in connection with this submission were unreasonable.

Having thus determined that the hours for which the plaintiff seeks reimbursement were reasonable, the Court next considers the hourly rate at which this time will be compensated.

### B.     The Plaintiff's Proposed Reimbursement Rates are Reasonable

In response to the plaintiff's fee request, WMATA apparently concedes that the plaintiff's successful First Amendment claim, as well as his subsequent fee petition, qualify as "complex federal litigation" giving rise to reimbursement at rates set out under a *Laffey*-derived fee matrix. *See* Def.'s Opp'n at 3–5 (urging the Court to award fees based on the USAO *Laffey* Matrix).

Nonetheless, the parties contest *which Laffey* matrix should be used to identify a reasonable reimbursement rate for the plaintiff's attorneys' time. In particular, while the plaintiff's proposed fee award incorporates rates provided by the LSI/*Salazar* Matrix, WMATA contends these rates are overly generous and asks the Court to look instead to the USAO *Laffey* Matrix. Relying on its preferred matrix, WMATA proposes a reimbursement rate of $520.00 per hour for the plaintiff's public interest attorney, and $460.00 and $370.00 per hour, respectively, for the two Participating Attorneys who prepared the plaintiff's submissions to the Court. *Id.* at

1–3, 5.  As a result, WMATA proposes a total fee award of $23,424.00, which represents a

nearly forty percent reduction from the plaintiff's initial requested award.

Consistent with the burden-shifting regime set out by the D.C. Circuit, the discussion that

follows considers first whether the plaintiff has met his burden of demonstrating that his

requested rates are reasonable before then addressing WMATA's arguments in support of its

preferred reimbursement rates.

## 1. *The Plaintiff Meets His Burden of Demonstrating that His Requested Rates are Reasonable*

As the D.C. Circuit recently emphasized, the party seeking reimbursement of attorneys'

fees under federal fee-shifting statutes bears the initial burden of justifying any requested

reimbursement rate.  *Eley*, 793 F.3d at 100.  To do so, the fee applicant must present evidence,

beyond his attorneys' own affidavits, demonstrating that "the requested rates are in line with

those prevailing in the community for similar services by lawyers of reasonably comparable

skill, experience and reputation."  *Id.* (quoting *Blum v. Stenson*, 465 U.S. at 895).  Here,

reviewing the evidence submitted in support of the pending fee application, as supplemented by

the plaintiff's submissions in response to recent developments clarifying the scope of the

plaintiff's evidentiary burden, the plaintiff has met this initial burden.

Along with his initial fee petition, the plaintiff submitted affidavits from each of his

attorneys describing their experience and expertise, as well as their typical billing practices in

litigating civil rights cases.  These submissions demonstrate that each of the plaintiffs' attorneys

maintains significant experience in litigating civil rights actions in this jurisdiction and other

federal courts throughout the country.  *See* Light Aff. ¶ 4; Day Aff. ¶ 6; McKusick Decl. ¶ 3.

Likewise, declarations from the Participating Attorneys suggest that these attorneys either

customarily charges rates comparable to those set out in the LSI/*Salazar* Matrix, Light Aff. ¶ 5

(explaining that the attorney charges paying clients at such rates), or explicitly agreed with the plaintiff in this case to seek compensation at such rates, Day Aff. ¶ 10 (indicating that, with no expectation of a damages award, the attorney and the plaintiff "agree[d] and expect[ed]" that the attorney would receive fees at the rate set out in the LSI/*Salazar* Matrix).

Moreover, following the D.C. Circuit's decision in *Eley v. District of Columbia*, which clarified the evidentiary burden the plaintiff bears in connection with the instant fee application, *see* 93 F.3d at 100, the plaintiff requested, and the Court granted, an opportunity to submit additional materials in support of his proposed reimbursement rates, *see* Minute Order, dated July 27, 2015. The plaintiff subsequently submitted supplemental material designed to demonstrate that the plaintiff's requested reimbursement rates are in line with the prevailing market rates for comparable legal services in the Washington, D.C. area. *See* Pl.'s Supp., ECF No. 33. Specifically, the plaintiff submitted:

(1) An affidavit from one of the plaintiff's Participating Attorneys providing additional information regarding that attorney's practice of charging paying clients at rates based on the LSI/*Salazar* Matrix and explaining that this attorney has received reimbursement at such rates in a prior civil rights action before the District of Columbia Court of Appeals, *see* Fourth Fee Aff. Jeffrey R. Light (Aug. 10, 2015), ECF No. 33-15;

(2) A declaration from the economist who developed the LSI/*Salazar* Matrix explaining the distinction between that matrix and the USAO *Laffey* Matrix and averring that the LSI/*Salazar* Matrix more closely approximates actual prevailing rates for legal services in the Washington, D.C. area, *see* Decl. Michael Kavanaugh (June 1, 2010), ECF No. 33-1;

(3) Declarations from three civil rights attorneys practicing in the Washington D.C. area, who attest to the appropriateness of LSI/*Salazar*-level reimbursement rates in complex federal civil rights litigation, *see* Decl. Paul D. Clement (Mar. 10, 2014), ECF No. 33-5; Aff. Rachel Meeropol (Aug. 10, 2015), ECF No. 33-13; Aff. Robert Corn-Revere (Aug. 11, 2015), ECF No. 33-14;

(4) Two articles from the *National Law Journal* indicating that private attorneys in the Washington, D.C. area charged rates roughly equivalent to the rates provided under the LSI/*Salazar* Matrix in matters involving complex federal litigation, *see* Pl.'s Supp., Ex. 2, ECF No. 33-3; *id.*, Ex. 3, ECF No. 33-4.

(5) An article from *Corporate Counsel* listing $649.24 as the average hourly billing rate for partners in Washington, D.C.-area law firms in 2012, which generally corresponds to the rates applicable to attorneys with more than ten years of experience provided by the LSI/*Salazar* Matrix for that year, *see id.*, Ex. 9, ECF No. 33-11;

(6) *National Law Journal* billing surveys from 2012 and 2013 reflecting high, low, and median billing rates for partners and associates at numerous Washington, D.C.-area law firms, with many median rates exceeding the maximum rate provided by the LSI/*Salazar* Matrix in those years, *see id.*, Ex. 4, ECF No. 33-6;

(7) A "Partner Compensation Survey" prepared by a legal services consulting firm in 2014 showing that the average hourly rate for partners in the Washington, D.C. area was $662.00 in 2012 and $705.00 in 2014, *see id.*, Ex. 8 at 9, ECF No. 33-10.

(8) Three Orders, issued by Judges on this Court or the District of Columbia Superior Court, awarding attorneys' fees based on rates provided by the LSI/*Salazar* Matrix under fee-shifting statutes; *see id.*, Ex. 7 (Omnibus Order, *Ortberg v. Goldman Sachs*,

No. 2010 CA 9043 B (D.C. Apr. 11, 2014), ECF No. 33-7); *id.*, Ex. 6 (Order, *Ricks v. Barnes*, No. 05-1756 (HHK) (D.D.C. May 12, 2008)), ECF No. 33-8; *id.*, Ex. 7 (Order, *Smith v. District of Columbia*, No. 00-894 (GK) (D.D.C. Dec. 18, 2006)), ECF No. 33-9.

This Court recently considered similar evidence in *Makray v. Perez*, No. 12-CV-520 (BAH), 2016 WL 471271 (D.D.C. Feb. 8, 2016). There, as here, the plaintiff submitted, in addition to her counsel's own affidavits describing his extensive experience litigating federal civil rights actions; a declaration from the economist who designed the LSI/*Salazar* Matrix describing the advantages of that matrix vis-à-vis the USAO *Laffey* Matrix; declarations from experienced civil rights litigators, who averred that their customary billing rates were comparable to those set out in the LSI/*Salazar* Matrix; and billing surveys indicated that the LSI/*Salazar* Matrix closely approximates the actual prevailing market rate for legal services in the District of Columbia. *See id.* at *16. As in *Makray*, the instant fee application is supported by "evidence falling into each of the relevant categories identified by the D.C. Circuit" as relevant to determining whether a requested reimbursement rate is reasonable. *Id.* (citing *Eley*, 793 F.3d at 101). Taken together, and consistent with this Court's reasoning in *Makray*, this evidence persuasively demonstrates that the plaintiff has met his initial burden of demonstrating that rates provided by the LSI/*Salazar* Matrix, as opposed to the USAO *Laffey* Matrix, are in line with those charged by comparably experienced and skilled attorneys in the private market.

The plaintiff having met this initial burden, the Court must presume that reimbursement at rates supplied by the LSI/*Salazar* Matrix is reasonable and consider next whether WMATA puts forward sufficient evidence to overcome this presumption of reasonableness.

## 2.  *WMATA Fails to Rebut the Presumption that the Plaintiff's Requested Reimbursement Rates are Reasonable*

Contending that the plaintiff's requested reimbursement rates are unreasonably high, WMATA does not attempt to rebut the plaintiff's evidence of his attorneys' experience, expertise, or customary billing practices.  *See generally* Def.'s Opp'n.  Instead, arguing that the USAO *Laffey* Matrix provides reasonable rates for the plaintiff's attorneys, WMATA suggests that its preferred matrix is both more accurate and more widely accepted in this jurisdiction than the more generous LSI/*Salazar* Matrix.

First, WMATA explains that the USAO *Laffey* Matrix is generated using more localized inflationary measures to calculate reasonable rates for Washington-area attorneys, while the LSI/*Salazar* Matrix is based instead on statistics reflecting changes in the cost of legal services nationwide.  *Id.* at 2–3.  As a result, WMATA contends, the USAO *Laffey* Matrix better approximates the actual cost of legal services in the District of Columbia and, therefore, serves as a more appropriate basis for calculating the appropriate reimbursement rate under § 1988.  *Id.* Likewise, while acknowledging that the LSI/*Salazar* Matrix "has been approved for use," WMATA relies on non-binding authority to argue that the USAO *Laffey* Matrix "is far more widely accepted" as a measure of prevailing market rates for legal services in this jurisdiction. *Id.* at 2 (citing authorities).[4]

In large measure, WMATA's arguments on this score echo those thoroughly considered, and rejected, in this Court's recent decision in *Makray*.  As here, the defendant federal agency in

---

[4]      In the alternative, WMATA asks the Court to reimburse the plaintiff at an hourly rate no greater than the average rate charged by all private attorneys retained by the agency to "handle complex litigation matters requiring specific expertise."  Def.'s Opp'n at 3.  By definition, however, this "blended" average groups attorneys regardless of their individual skills, experience, and reputation.  Most notably, WMATA's proposed "blended" rate of $486.00 is well below the hourly rate provided by the USAO *Laffey* Matrix for attorneys, like the plaintiff's public interest counsel, with more than twenty years of experience.

that case did not contest that the plaintiff's employment discrimination action qualified as "complex federal litigation" for which reimbursement under a *Laffey*-derived matrix was appropriate. *Makray*, 2016 WL 471271, at *3. Instead, the agency argued that the USAO *Laffey* Matrix, and not the LSI/*Salazar* Matrix, supplied the reasonable reimbursement rate for the plaintiff's attorney's time. To determine which rate to apply, the Court looked principally to the D.C. Circuit's recent holding in *Salazar ex rel. Salazar v. District of Columbia*, 809 F.3d 58 (D.C. Cir. 2015). In *Salazar*, the D.C. Circuit upheld an award, based on the LSI/*Salazar* Matrix, reimbursing a prevailing plaintiff for attorneys' fees incurred in litigating a claim, like the claim at issue here, brought under 42 U.S.C. § 1983. Construing the *Salazar* Court's holding, this Court concluded that "at least in cases qualifying as 'complex federal litigation,' the *Salazar*/LSI Matrix likely provides a conservative estimate of the prevailing market rate for attorneys practicing in the District of Columbia." *Makray*, 2016 WL 471271, at *5–9. In so doing, the Court expressly rejected the argument, advanced here by WMATA, that the inflationary measure underlying the USAO *Laffey* Matrix more accurately reflects changes in the cost of legal services in the District of Columbia. *See id.* at *7 (noting that the *Salazar* Court broadly confirmed the superior accuracy of the LSI/Salazar rates).

Similarly, although WMATA suggests that the USAO *Laffey* Matrix enjoys broader support among the Judges on this Court, heavy reliance on prior fee awards to establish a reliable prevailing market rate for comparable legal services presents a number of challenges. Most notably, prevailing civil rights attorneys, especially those who work primarily or exclusively on a contingency basis, often "have a powerful incentive to minimize further litigation . . . and obtain prompt payment for their services." *Flood v. District of Columbia,* No. CV 15-497 (BAH), 2016 WL 1180159, at *12 (D.D.C. Mar. 25, 2016). As a result, where attorneys, like the plaintiff's

counsel in this case, rely to some extent on fee-shifting to sustain their practice, prior fee awards may understate the actual prevailing market rates for attorneys providing comparable services. *Id.* Indeed, in *Salazar*, the D.C. Circuit dismissed as "not compelling" proffered evidence of prior fee awards, emphasizing that earlier district court decisions are "not binding precedent" for either the Circuit or other Judges on this Court. *Salazar*, 809 F.3d at 65 n.1.

Even taken on its own terms, however, WMATA's suggestion that the weight of authority points to reimbursement using the USAO *Laffey* Matrix disregards recent precedent supporting the use of the LSI/*Laffey* Matrix to identify reasonable reimbursement rates in federal civil rights cases. Most obviously, WMATA's view that rates provided by the LSI/*Salazar* Matrix are overly generous was flatly rejected, under substantially similar circumstances, by the D.C. Circuit in *Salazar*. *Id.* at 64. Given the substantial similarity between the evidence submitted by the parties here and the corresponding evidence considered by the D.C. Circuit in *Salazar*, WMATA's objection to the plaintiff's proposed reimbursement at LSI/*Salazar* rates faces a high hurdle indeed. Nonetheless, while the plaintiff noted the *Salazar* decision in a recent notice to the Court, *see* Notice Supp. Auth., ECF No. 36, WMATA has declined to submit a response to this notice or otherwise put forward a basis on which to distinguish the instant case from the *Salazar* decision.

Moreover, following *Salazar*, Judges on this Court have approved fee awards based on the LSI/*Salazar* Matrix, at least where fee applications in matters involving "complex federal litigation" are supported by competent evidence of prevailing market rates. *See Makray*, 2016 WL 471271; *Citizens for Responsibility & Ethics in Washington v. United States Dep't of Justice*, No. 1:11-CV-00374 (CRC), 2016 WL 554772 (D.D.C. Feb. 11, 2016); *cf. Williams v. Johnson*, No. CV 06-2076 (CKK), 2016 WL 1257831, at *5–6 (D.D.C. Mar. 30, 2016) (rejecting

LSI/*Salazar* rates upon concluding that the plaintiff's state law claim did not qualify as "complex federal litigation"); *Wesby v. District of Columbia*, No. CV 09-0501 (RC), 2016 WL 2992012, at *3 (D.D.C. May 23, 2016) (same, upon concluding that the plaintiffs submitted no evidence "showing that the [LSI/*Salazar*] Matrix more accurately reflects the market rate for their counsel's work").[5] By comparison, each of the cases cited by WMATA pre-date the D.C. Circuit's holding in *Salazar* that the LSI-based *Laffey* Matrix generally provides a conservative estimate of the prevailing market rate for legal services in connection with complex federal litigation in the District of Columbia. *See* Def.'s Opp'n at 2.

Here, the plaintiff has presented evidence showing that the LSI/*Salazar* Matrix provides reimbursement rates that are broadly in line with prevailing rates for legal services in complex federal litigation in the Washington, D.C. area.[6] By contrast, the rehashed arguments and non-binding, superseded precedent offered by WMATA in support of its proposed alternative matrix fail to rebut the presumption that reimbursement at rates provided by the LSI/*Salazar* Matrix is reasonable.

### 3. *The Plaintiff Will Be Reimbursed Based on Current Rates for His Attorneys' Level of Experience at the Time of Billing*

Finally, though the Court concludes that the plaintiff is entitled to reimbursement at rates provided by the LSI/*Salazar* Matrix, the parties further disagree as to *which* rates provided by

---

[5] In at least two instances, Judges on this Court have awarded fees at below-LSI/*Salazar* rates where the prevailing party *requested* reimbursement at a reduced rate. *See Ashraf-Hassan v. Embassy of France in the United States*, No. CV 11-805 (JEB), 2016 WL 3014615, at *4 (D.D.C. May 24, 2016) (awarding fees based on USAO *Laffey* Matrix, as requested by the prevailing plaintiff); *Martinez v. Asian 328, LLC*, No. 15-CV-1071 (GMH), 2016 WL 1698261, at *7 (D.D.C. Apr. 27, 2016) (same, with fees awarded at the plaintiff's attorney's customary rate).

[6] Though noted by neither party, the D.C. Council has embraced the *Salazar*/LSI Matrix as a measure of reasonable attorneys' fees for a prevailing plaintiffs alleging violations of local worker protection laws by expressly authorizing reimbursement of attorneys' fees "computed pursuant to the matrix approved in *Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000), and updated to account for the current market hourly rates for attorney's services." D.C. Code §§ 32–1308(b)(1), 32–1308.1(m)(1). This formal adoption of the LSI/*Salazar* Matrix by the local governing body in wage theft litigation provides additional support for the plaintiff's contention that this matrix generally reflects prevailing market rates for civil rights actions in the District.

this matrix should be applied in this case.  Like most fee matrices, the LSI/*Salazar* Matrix provides differing rates based on an attorney's level of experience.  Specifically, the LSI/*Salazar* Matrix groups attorneys into five categories based on the number of years since their law school graduation.  Pl.'s Supp., Ex. 1 (the categories include "1-3," "4-7," "8-10," "11-19," and "20+," with an attorney's experience calculated as of June 1 of each year); *see also* Laffey Matrix, http://www.laffeymatrix.com/see.html (last visited July 7, 2016).  Here, in addition to disputing which *Laffey*-derive fee matrix should be used in this case, the parties appear to disagree as to: (1) the level of experience that should be attributed to each of the plaintiff's Participating Attorneys in identifying the appropriate reimbursement rate for each attorney; and (2) whether the plaintiff should be reimbursed at rates provided by the current matrix or, instead, at the rates in effect at the time the plaintiff's attorneys billed time on the plaintiff's behalf.

Unfortunately, the parties' briefing leaves their respective positions on each of these two remaining issues somewhat difficult to discern.  Generally speaking, however, the plaintiff advocates for reimbursement for each of the Participating Attorneys at rates provided by the current LSI/*Salazar* Matrix based on their current level of experience.  *See* Pl.'s Mem. at 8; Pl.'s Reply at 8–10.  By contrast, WMATA contends that the Court should award fees based on the level of experience these attorneys possessed, and at rates provided by the LSI/*Salazar* in place, at the time they billed the hours for which the plaintiff seeks reimbursement.  Def.'s Opp'n at 4–5.  The discussion that follows addresses these related issues in tandem.

Arguing for reimbursement at *current* rates based on his attorneys' *current* levels of experience, the plaintiff relies principally on the discussion of a similar issue in *Miller v. Holzmann*, 575 F. Supp. 2d 2 (D.D.C. 2008), *vacated in part on other grounds sub nom. U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 786 F. Supp. 2d 110 (D.D.C. 2011).  Pl.'s Reply at

8–10.  In that case, the plaintiff sought $20 million in attorneys' fees after prevailing on his claim

under the False Claims Act, 31 U.S.C. §§ 3729–3733.  575 F. Supp. 2d at 3–4.  In what the court

described as a "suit of epic duration," more than a decade separated the onset of litigation on the

merits and resolution of the subsequent fee-shifting dispute, with the time entries for which the

prevailing plaintiff sought reimbursement spanning a thirteen-year period.  *Id.* at 18.  As here,

the plaintiff sought reimbursement for these hours based on his attorneys' then-current billing

rates, while the defendants favored reimbursement "using historical rates corresponding to the

years when the work was performed."  *Id.*  Relying on the Supreme Court's admonition that

reasonable attorneys' fees awarded pursuant to federal fee-shifting statutes "should account for

delay in payment," *id.* (citing *Missouri v. Jenkins*, 491 U.S. 274, 282 (1989)), the *Miller* court

reasoned that an award based on the plaintiff's attorneys' then-current rates would reasonably

compensate the plaintiff for the long delay in payment.  *Id.*

 Though *Miller* stands for the proposition that prevailing plaintiffs may obtain

reimbursement at their attorneys' current billing rates in some circumstances, the present case is

readily distinguishable.  Indeed, unlike the marathon litigation giving rise to the fee dispute in

*Miller*, the gravamen of the plaintiff's First Amendment challenge in this case was largely

resolved within a month of the plaintiff having filed his Complaint and corresponding request for

a preliminary injunction.  *See* Compl. (filed July 17, 2014); Order Granting Prelim. Inj. Relief

(dated Aug. 14, 2014).  Following a brief stay to allow WMATA to review the challenged

regulation, the Court awarded summary judgment, and a permanent injunction, to the plaintiff

roughly seven months after he filed his claim against WMATA.  *See* Minute Order, dated Feb.

24, 2015.  Thereafter, the case was again delayed, this time to provide the parties an opportunity

to brief the impact of the D.C. Circuit's *Eley* decision on the present fee dispute and, importantly,

to provide the plaintiff an opportunity to supplement his prior submissions in order to justify his request for reimbursement at LSI/*Salazar* rates. *See* Minute Order, dated July 27, 2015. In short, the plaintiff's reliance on *Miller* in support of his request for reimbursement reflecting the brief delay in adjudicating the present fee dispute is misplaced. For this reason, the non-binding authority relied upon by the plaintiff provides little basis for an award based on his attorneys' current level of experience.

On the other hand, the D.C. Circuit has consistently recognized that delayed payment of attorneys' fees "deprives the eventual recipient of the value of the use of the money in the meantime, which use, particularly in an inflationary era, is valuable." *West*, 717 F.3d at 1034 (quoting *Copeland v. Marshall*, 641 F.2d 880, 893 (D.C. Cir. 1980)). Where an adjustment to reflect such a delay is warranted, "it may be made 'either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value.'" *Id.* (quoting *Perdue*, 130 S.Ct. at 1675). Thus, "instead of using current rates, courts may also compensate for delay by adding interest to the historic rate so that the amount paid today reflects the approximate value of the historical rates charged at the time services were rendered." *Id.*

With this in mind, the Court is satisfied that compensation based on rates provided in the current LSI/*Salazar* Matrix is warranted. Indeed, while neither party has proposed adding interest to the plaintiff's attorneys' historical rates, the D.C. Circuit has repeatedly upheld the prime rate as a measure of prejudgment interest. *See, e.g., Cont'l Transfert Technique Ltd. v Fed. Gov't of Nigeria*, 603 F. App'x 1, 5 (D.C. Cir. 2015). As of July 7, 2016, the prime rate stood at 3.5%, *see* Board of Governors of the Federal Reserve System, Selected Interest Rates (Daily), https://www.federalreserve.gov/releases/h15/update/ (last visited July 7, 2016), which rate roughly corresponds to recent annual increases in rates provided by the LSI/*Salazar* Matrix,

*see* Pl.'s Supp., Ex. 1.  By contrast, reimbursement based on the plaintiff's attorneys' current

level of experience would increase the Participating Attorneys' reimbursement rates by over

20%.  Put simply, the plaintiff offers no compelling justification for such a dramatically more

generous award based on the roughly seventeen months that have elapsed between the resolution

of the plaintiff's First Amendment claim and the present fee award.  Instead, the plaintiff will be

reimbursed at the rates provided by the current LSI/*Salazar* Matrix based on his attorneys'

respective levels of experience at the time that they provided legal services to the plaintiff.

*Accord Williams*, 2016 WL 1257831, at *3.

Reviewing their affidavits, the plaintiff's junior Participating Attorney graduated from

law school in 2004, Light Aff. ¶ 1, placing him in the "8-10" category for work prior to June 1,

2014, and in the "11-19" category for work after June 1, 2014.  The plaintiff's senior

Participating Attorney graduated from law school in 1995, Day Aff. ¶ 4, placing him in the "11-

19" category for work prior to June 1, 2014 and the "20+" category for work after June 1, 2014.

The plaintiff's public interest attorney graduated from law school in 1984, McKusick Decl. ¶ 2,

and thus was in the "20+" category for the duration of this action.  Based on the invoices

submitted by the plaintiff, *see* Pl.'s Supp.,ECF No. 33-12, the plaintiff is entitled to a total award

of $50,145.00, which includes: (1) $3,661.60 (4.6 hours at an hourly rate of $796.00) for hours

billed by his public interest attorney; (2) $33,447.10 (4.4 hours at an hourly rate of $586.00 and

46.7 hours at an hourly rate of $661.00) for hours billed by the plaintiff's junior Participating

Attorney; (3) $12,536.30 (0.3 hours at an hourly rate of $661.00 and 15.5 hours at an hourly rate

of $796.00) for hours billed by the plaintiff's senior Participating Attorney; and (4) $500.00 in

litigation costs.  Pl.'s Supp., Ex. 10.[7]

---

[7]    In addition to reimbursement of attorneys' fees, the plaintiff seeks reimbursement of $500.00 in litigation
costs, Pl.'s Reply at 1, which includes the $400.00 filing fee and $100.00 in process server fees, *see* Bill of Costs,

## IV.    CONCLUSION

For the foregoing reasons, the plaintiff's motion for attorneys' fees is granted in part and denied in part.  Having met his burden of demonstrating that rates provided by the LSI/*Salazar* Matrix are in line with the prevailing market rates for the services he received in connection with his successful First Amendment claim, the plaintiff is entitled to reimbursement based on that matrix.  Further, due to the slight delay in payment, the plaintiff is entitled to reimbursement at rates provided by the current version of that matrix, based upon his attorneys' level of experience during the litigation, rather than, as the plaintiff requests, at rates commensurate with his attorneys' current levels of experience.  Finally, the plaintiff may be reimbursed for his litigation costs, including process server fees, as provided by this Court's Local Civil Rule 54.1(d)(2).  Accordingly, the defendant shall pay to the plaintiff a total of $50,145.00 in attorneys' fees and costs incurred by the plaintiff in pursuing his claim.

An appropriate Order accompanies this Memorandum Opinion.


Date: July 11, 2016


_____
BERYL A. HOWELL
Chief Judge


---

ECF No. 23-7.  Of this total, WMATA contests only the $100.00 process server fees.  Def.'s Opp'n at 5 (citing *Zdunek v. Wash. Metro. Area Transit Auth.*, 100 F.R.D. 689, 692 (D.C. 1983); *Harvey v. Mohammed*, 951 F. Supp. 2d 47, 73 (D.D.C. 2013)).  As the plaintiff rightly notes, *see* Pl.'s Reply at 10–12, however, the non-binding authority relied upon by WMATA in contesting reimbursement of these costs did not consider this Court's local rules, which explicitly provide that "[c]osts of service of summons and complaint" are taxable.  LCvR 54.1(d)(2).  Consistent with this Court's local rules, reimbursement of these costs to the plaintiff will be ordered.  *Accord Law Office G.A. Lambert and Assoc. v. Davidoff*, 72 F. Supp. 3d 110, 120 (D.D.C. 2014) (holding costs of translating summons and complaint into German "necessary to file this complaint and . . . therefore taxable."); *Youssef v. FBI*, 762 F. Supp. 2d 76, 85 (D.D.C. 2011), *aff'd in part*, 687 F.3d 397 (D.C. Cir. 2012) (allowing for recovery of special process server fees based on LCvR 54.1(d)(11), which provides for taxation of "costs of service of a subpoena on a witness who testified at a deposition, hearing or trial.")